**FILED**
**Apr 15, 2019**
**09:00 AM(ET)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| Terri Holdway, | ) | Docket No.: 2017-08-0751 |
| Employee, | ) | |
| v. | ) | |
| Lakeside Behavioral Health Systems, | ) | State File No. 15611-2016 |
| Employer, | ) | |
| And | ) | |
| New Hampshire Insurance Co., | ) | Judge Thomas Wyatt |
| Carrier. | | |

## COMPENSATION HEARING ORDER DENYING BENEFITS
## FOR MENTAL INJURY

This matter came before the Court on April 8, 2019, for a Compensation Hearing.[1] The primary legal issue is whether Terri Holdway is entitled to benefits for an alleged work-related mental injury. For the reasons below, the Court holds that Ms. Holdway did not prove entitlement to recovery for a mental injury.

### History of Claim

Ms. Holdway worked as a nurse at Lakeside Behavioral Health Systems, an in-patient psychiatric facility. Her nursing career lasted more than forty years with almost ten years of employment at Lakeside. The injury occurred when a patient knocked her into a wall in February 2016.[2] Her head and face struck the wall, causing fractured facial bones and a temporary loss of consciousness. Dr. Lawrence Weeda treated her facial injuries surgically and released her without restrictions or permanent impairment.

Ms. Holdway seeks medical, temporary and permanent disability benefits plus attorney's fee and penalties for an alleged mental injury arising out of the February 2016

---

[1] The Court heard this claim on April 4 but gave the parties additional time to brief certain issues.

[2] Ms. Holdway did not know exactly how the collision occurred. Lakeside's human resources director testified that a videotape of the incident showed that the patient collided with Ms. Holdway but did not assault her. Lakeside did not deny liability for Ms. Holdway's physical injury.

1

incident. Lakeside defended the mental-injury claim on the ground that Ms. Holdway did not prove that she sustained a mental injury arising primarily out of and in the course and scope of employment.[3]

The medical records revealed that Ms. Holdway sought care for mental symptoms from a provider in her primary care physician's office approximately eight and one-half months before her injury at Lakeside. The record for this visit noted that Ms. Holdway said her "life was out of control." She reported depression, anxiety, fatigue, weight change, sleep disturbance, and decreased concentration. She stated she was overwhelmed by Lakeside's high patient census and feared she might give the wrong medication to a patient. Ms. Holdway also complained that she could not get off from work when needed and felt panicked that Lakeside would terminate her because she sometimes arrived late to work. She reported the deaths of friends and a beloved dog, and her involvement in two vehicle collisions, one where she was physically injured, as other factors contributing to her mental symptoms.

The PCP provider diagnosed Ms. Holdway with anxiety and depression, prescribed Zoloft, and referred her to a psychiatrist. She did not see the psychiatrist and testified that she only took two or three Zoloft pills due to side effects. She worked at Lakeside until the date of injury.

Ms. Holdway's first post-injury report of mental symptoms is a March 1 pre-operative note stating that she had a blunt affect and complained of impaired concentration, cognition, and memory. The next day, Ms. Holdway sought unauthorized emergency care for anxiety, dizziness, and nausea that she related to the incident at Lakeside. Diagnostic testing of her heart and brain proved negative, and the emergency provider discharged her with instructions to seek follow-up care with named physicians. Neither party submitted evidence that Ms. Holdway saw these physicians.

Ms. Holdway underwent facial surgery on March 8 by the authorized treating physician, Dr. Lawrence Weeda, and a resident. The initial post-operative reports do not document mental symptoms. However, on April 6, a resident dentist at UT noted that Ms. Holdway "seems very anxious/paranoid since the attack" and "recommended" she seek "psychiatric/psychological" care. The resident released her to return to work on April 11. Dr. Weeda later rated Ms. Holdway with 0% impairment for her physical injury.

Ms. Holdway returned to work without seeking psychiatric care. Neither Lakeside nor its carrier offered her a psychiatric panel. Lakeside explained that it did not offer a psychiatric panel because Dr. Weeda did not make a psychiatric referral as required by

---

[3] Both parties raised a number of other issues in their zealous representation of their clients. In the interest of brevity, the Court limits its discussion to the issue it deemed necessary to its decision.

2

law.

Ms. Holdway testified that she performed her work satisfactorily "on the surface" after her return but feared another patient attack. She stated Lakeside continued to assign her an overwhelming amount of work. She claimed she complained of nervousness and anxiety to her supervisors, Jennifer Castellaw and Christina Wyatt, and told them she needed to see "somebody." However, she testified that she never specifically asked Lakeside or the adjuster to provide a psychiatric panel or schedule her with a psychiatrist.

Lakeside's human resources manager, Lori Deason, testified that she assisted Ms. Holdway with her workers' compensation claim. She noticed Ms. Holdway was anxious about the correct steps to take in her claim. She gave Ms. Holdway a brochure about Lakeside's Employee Assistance Program (EAP). Ms. Holdway did not specifically ask Ms. Deason for psychiatric treatment or a panel.

Ms. Holdway testified that she experienced increasing mental difficulty as she worked at Lakeside after the injury. She claimed her fear of another attack increased and that, while an incident in which a patient spat and threw a wheelchair at her pushed her closer to leaving Lakeside, it did not compel her to resign. In fact, Ms. Holdway continued working until December 2016, when she resigned in the middle of a shift after an argument with a supervisor. She wrote an immediate notice, stating, "I am resigning due to medical and emotional issues that have come up after I was attacked by a patient in February."

Ms. Holdway attempted to rescind the resignation thirty minutes later. Ms. Deason and Lakeside's nursing executive met with her the following day. Ms. Holdway asked for her job back and stated she believed she could perform the necessary duties. Ms. Deason testified that Ms. Holdway stated during the meeting that she was anxious about her job performance, especially about giving patients the wrong medication, but she specifically said that she was not afraid of the patients. Nonetheless, Lakeside declined to reinstate Ms. Holdway because she had abandoned patients during the middle of a shift.

Ms. Holdway has not worked since. She testified she did not attempt to obtain a new position because she was not mentally or physically able to perform nursing work.[4] Presently, she receives Social Security retirement benefits.

Ms. Holdway worked seven months at Lakeside after the injury before she sought treatment for mental symptoms. She returned to her PCP's office in November 2016 and reported anxiety over several issues, including the injury at Lakeside, a collision where

---

[4] Ms. Holdway attended the Compensation Hearing in a wheelchair. She testified that she has badly arthritic knees and suffered a stroke after leaving Lakeside.

3

her car was totaled, and the deaths of several friends. Ms. Holdway reported nervousness about going out into the public and to work. The PCP diagnosed anxiety and post-traumatic stress disorder, prescribed Zoloft, and recommended psychiatric care.

Ms. Holdway returned to the PCP shortly after she lost her job in December requesting a change in medication because of side effects. She was prescribed Paxil. She returned on January 13, 2017, reporting light-headedness, sleep disturbance, decreased concentration, side effects with Paxil, and anxiety about going outside her house and being with people. The PCP assessed her with nervousness, anxiety, hyperactivity, and depressed mood and recommended she see a specialist to prescribe further medication.

Before January 13, Ms. Holdway had already seen Licensed Clinical Social Worker Wendy Holdsworth, whom she chose from a list of providers from Lakeside's EAP. Ms. Holdsworth's notes stated that Ms. Holdway reported anxiety and panic attacks beginning after the incident at Lakeside. She also recorded that Ms. Holdway experienced other trauma, including a robbery at gunpoint, a vehicle collision, the deaths of her father and a beloved dog, her inability to get off work to care for her dying father, and job loss with resultant financial strain. Ms. Holdsworth concluded that Ms. Holdway had anxiety and unspecified depressive disorders and recommended counseling. She also referred her to a nurse practitioner to prescribe medication.

Until recently, Ms. Holdway attended regularly-scheduled counseling with Ms. Holdsworth and took different medications. Ms. Holdsworth noted several subjects discussed in therapy, including Ms. Holdway's anxiety over using medication, stress over her loss of income, anger because Lakeside denied her mental-injury claim, anxiety over flying and leaving her pet at home, and concerns about diminishing mobility, falls, and loneliness.

Ms. Holdway saw two psychiatrists for one-visit independent medical examinations. She selected Dr. Melvin Goldin, and Lakeside chose Dr. Joel A. Reisman. Both testified by deposition.

Dr. Goldin testified that he holds board certification in general and adolescent psychiatry, and for the past decade approximately seventy percent of his practice has been treating adults. He reviewed Ms. Holdway's medical records, interviewed her, and performed standardized testing.

He concluded that she met the diagnostic criteria for post-traumatic stress disorder (PTSD) and stated that her PTSD was probably permanent because it had persisted for many months despite treatment. He gave the opinion that Ms. Holdway's PTSD arose primarily out of and in the course and scope of her employment by Lakeside. He further testified that Ms. Holdway was permanently unable to return to work at an in-patient psychiatric facility such as Lakeside, but he stated she might be able to work as a nurse in

4

a less stressful environment. He rated her impairment from the PTSD at 10% to the whole body.

Dr. Goldin testified that he followed the diagnostic criteria in the DSM 5 to conclude that Ms. Holdway has PTSD. Specifically, he testified that she was exposed to an actual, serious injury, and following the injury developed exaggerated negative beliefs and emotional states (hypervigilance and an exaggerated startle reflex), and diminished concentration.

On cross-examination, Dr. Goldin testified that Ms. Holdway reported a chronic level of anxiety related to the performance of her job at Lakeside but stated that she described that anxiety as far less stressful than what she experienced after the injury. Dr. Goldin admitted that he did not review treatment records before the date of the injury at Lakeside. He also admitted that she did not tell him about the robbery at gunpoint, a hit-and-run accident where her car was struck so hard the "trunk was in her back seat," her inability to get off work to care for her dying father, and continuing to work at Lakeside after a patient threw a wheelchair at her and cussed at her.[5]

On redirect, Ms. Holdway's counsel asked Dr. Goldin to reconsider his causation opinion in view of the traumas he learned about on cross-examination. He maintained that Ms. Holdway's PTSD and impairment arose primarily out of and in the course and scope of employment considering all known causative factors. In support, he cited her ability to perform well professionally before her injury at Lakeside and her difficulty at work afterward.

Lakeside countered with the testimony of Dr. Reisman, a board-certified psychiatrist and a founder of Lakeside. Like Dr. Goldin, he interviewed and tested Ms. Holdway. He reviewed the records Dr. Goldin reviewed, plus records documenting Ms. Holdway's treatment before the injury. Dr. Reisman also reviewed deposition testimony of Ms. Castellaw and Ms. Deason.

Dr. Reisman concluded that Ms. Holdway developed anxiety about performing her job at Lakeside before she sustained her facial injury. He testified that Ms. Holdway did not qualify for a PTSD diagnosis because she successfully returned to work at Lakeside for eight months after her injury, including after a patient spat and threw a wheelchair at her. He stated that he never treated a PTSD patient who did not have severe anxiety about returning to the scene of the trauma. Thus, Dr. Reisman concluded that Ms. Holdway did not have PTSD because she did not suffer the avoidance of the place and circumstances of the underlying trauma; both experts agreed the DSM 5 required this for a PTSD diagnosis.

---

[5] Some of this history was contained in the records of Ms. Holdsworth, which Dr. Goldin testified he reviewed.

Dr. Reisman also stated that Ms. Holdway did not qualify under another PTSD criterion—dysphoria (a persistent negative emotional state)—because she exhibited that attitude about her work at Lakeside before the injury occurred. He disagreed with Dr. Goldin's findings of hypervigilance and diminished concentration, stating that Ms. Holdway did not exhibit those characteristics in either her interview with him, the results of his testing, or in her post-injury period of work at Lakeside. Dr. Reisman also questioned Ms. Holdway's credibility because she did not tell him about seeking treatment for anxiety and depression in 2015 and she attributed her inability to ambulate to her alleged psychiatric injury.

On cross-examination, Dr. Reisman conceded that Ms. Holdway saw a provider only once for mental symptoms before the injury at Lakeside. Because of copyright concerns, he refused to provide portions of the standardized questions and Ms. Holdway's responses. Dr. Reisman also stated that he performs 60%-70% of his legal assessments for defendants.

Finally, Lakeside presented the in-person testimony of Ms. Castellaw, Ms. Holdway's supervisor both before and after her facial injury. Md. Castellaw stated that Ms. Holdway was a good but "needy" employee before the injury, explaining that she required constant reassurance that Ms. Castellaw liked her and that she performed her job correctly. Ms. Castellaw testified that she did not observe Ms. Holdway's anxiety level change post-injury. She also stated that Ms. Holdway did not tell her after she returned that she was fearful of a patient attack.

## Findings of Fact and Conclusions of Law

At a Compensation Hearing, the employee has the burden of proving every element of her claim by a preponderance of the evidence. *See* Tenn. Code Ann. § 50-6-239(c)(1) (2018); *Miller v. Old Folks Mission Ctr., Inc.,* 2019 TN Wrk. Comp. App. Bd. LEXIS 1, at *9-10 (Jan. 9, 2019). Ms. Holdway must prove that she sustained a mental injury arising primarily out of and in the course and scope of employment. Upon thorough consideration of the evidence, the Court holds that Ms. Holdway did not carry her burden.

The analysis begins with the Workers' Compensation Appeals Board's opinion in *Edwards v. Fred's Pharmacy,* 2018 TN Wrk. Comp. App. Bd. LEXIS 9, at *7-8 (Feb. 14, 2018), which held:

A "mental injury" is defined as "a loss of mental faculties or a mental or behavioral disorder." Tenn. Code Ann. § 50-6-102(17). To qualify as compensable, a mental injury must arise "primarily out of a compensable physical injury or an identifiable work-related event

6

resulting in a sudden or unusual mental stimulus." *Id.* . . . However, not all mental injuries are compensable. For example, a "psychological or psychiatric response due to the loss of employment or employment opportunities" is not compensable. Tenn. Code Ann. § 50-6-102(17).

The Supreme Court has also long held that mental symptoms caused by general job stress are not compensable. *See Cunningham v. Shelton Sec. Serv.,* 46 S.W.3d 131, 136-37 (Tenn. 2001) ("normal ups and downs are part of any employment relationship, and as we have said on many previous occasions, do not justify finding an 'accidental injury' for purposes of worker[s'] compensation law.")

In view of this authority, the Court holds that Ms. Holdway did not prove her mental-injury claim by a preponderance of the evidence. The evidence showed that she experienced anxiety related to her job at Lakewood before she suffered her facial injury. This anxiety related to general job stress—increased workload, difficulty obtaining time off, concern about correctly performing her job, and obtaining her supervisor's affirmation—and it manifested in the depression and diminished concentration that she reported to her PCP's office in November 2016. The Court also finds that non-work-related stressors contributed to Ms. Holdway's anxiety, both before and after the facial injury.

Neither Ms. Holdway's testimony nor the medical records established that her mental symptoms following the injury substantially differed from those she reported to her PCP's office eight months beforehand. She returned to work at Lakeside within a few days after receiving a release for her physical injury, and for the next eight months she successfully endured the same general work stress that she experienced before her injury. In fact, she exhibited sufficient mental strength to continue working at Lakeside even after a patient spat and threw a wheelchair at her.

Further, the Court holds that the evidence shows that Ms. Holdway's employment with Lakeside terminated not because of her disability but rather a disagreement with her supervisor. Ms. Holdway attempted to rescind the resignation shortly afterward and told Lakeside that she was physically and mentally able to care for patients at that time.

Further, the Court holds that the expert testimony did not establish Ms. Holdway's right to benefits. In reviewing expert testimony, the Court may consider the qualifications of the experts, the circumstances of their evaluation, the information available to them, and the evaluation of the importance of that information by other experts. *Owens v. Sitters, Etc.,* 2018 TN Wrk. Comp. App. Bd. LEXIS 26, at *18 (May 29, 2019). The Court has the discretion to conclude that the opinion of one expert should be accepted over that of another expert because it contains the more probable explanation. *Id.* at *19.

7

Dr. Goldin concluded that Ms. Holdway has PTSD related to her facial injury at Lakeside; Dr. Reisman testified that she does not qualify for a PTSD diagnosis but developed anxiety from a combination of her general duties at Lakeside and non-work-related stressors even before the injury. The Court holds that both psychiatrists are equally qualified to assess a claim of psychiatric injury, but Dr. Reisman provided the more probable explanation for Ms. Holdway's mental symptoms.

Dr. Reisman had a more complete medical history than Dr. Goldin, including, importantly, the fact that Ms. Holdway sought treatment for depression and anxiety related in part to general job stress at Lakeside eight months before her facial injury. Further, the Court holds, as Dr. Reisman concluded, that Ms. Holdway's post-injury return to work at Lakeside for eight months indicates that she did not develop the avoidance of the place and circumstances of her triggering trauma that is required for a PTSD diagnosis.

Therefore, the Court holds that Ms. Holdway did not satisfy her burden of proving by a preponderance of the evidence that she developed a mental injury arising primarily out of and in the course and scope of her employment at Lakeside. Thus, the Court dismisses her mental-injury claim and requests for an attorney's fee and penalty. The Court awards Ms. Holdway ongoing medical benefits for her facial injury with Dr. Weeda.

**Wherefore, it is ORDERED:**

1. Ms. Holdway's claim for benefits for an alleged mental injury is denied.

2. Lakeside shall provide ongoing medical benefits for Ms. Holdway's facial injury under the care of Dr. Weeda.

3. This Court taxes costs of $150.00 to Lakeside and/or its carrier under Tennessee Compilation Rules and Regulations Rule 0800-02-21-.07 (2018), to be paid to the Clerk of the Court of Workers' Compensation Claims within ten business days after this order becomes final. Further, counsel for Lakeside shall submit a Statistical Data Form to the Court Clerk within ten calendar days of the date of judgment.

4. Absent an appeal, this order becomes final thirty days after issuance.

8

**ENTERED April 15, 2019.**

_____

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

## APPENDIX

Technical record:  The Court considered the following:

1. Petition for Benefit Determination
2. Initial Dispute Certification Notice
3. Employee's additional issues
4. Post-Discovery Dispute Certification Notice
5. Employee Request for Scheduling Hearing
6. Notice of Scheduling Hearing
7. Scheduling Order
8. Transfer Order
9. Notice of Compensation Hearing
10. Employer Witness and Exhibit List
11. Employer Pre-Hearing Brief
12. Employee Pre-Hearing Brief
13. Employee Pre-Compensation Hearing Statement
14. Employee List of Proposed Exhibits
15. Employee List of Proposed Witnesses
16. Employee Post-Hearing Brief
17. Employer's Post-Hearing Brief

Exhibits:  The Court admitted the following exhibits into evidence subject to the indicated decisions on objections:

1. Transcript of the deposition of Dr. Melvin Goldin
2. Transcript of the deposition of Dr. Lawrence Weeda, plus attached exhibits
3. Transcript of the deposition of Dr. Joel Reisman, plus attached exhibits
4. Employee's Medical Records Compilation
   - Records of Dr. Melvin Goldin (sustained Lakeside's objection to the Physician Certification Form signed by Dr. Goldin—page 9—because it was filed after Dr. Goldin's

9

deposition, thus defense counsel did not have the opportunity to cross-examine the information on the form)

- Report of Dr. Joel Reisman
- Office notes of LCSW Wendy Holdsworth (overruled Lakeside's hearsay objection. The records were signed by the provider and accompanied by certifications of authenticity signed by the provider as custodian of the records)
- Causation letter of LCSW Wendy Holdsworth—pages 37-39 (sustained Lakeside's objection because Ms. Holdsworth is not a physician and thus not qualified to provide an opinion on causation, and also because providers cannot state written causation opinions by report at a Compensation Hearing. Tennessee Compilation Rules & Regulations 0800-02-21-.14(2).)
- Notes of Nurse Mark Hellelrode—pages 74-90 (sustained Lakeside's hearsay objection. Some of the records are not signed and those bearing an electronic signature do not indicate that the signature was given in a manner to confirm authenticity of the records. Tennessee Compilation Rules & Regulations 0800-02-21-.16(6)(b).)
- Records of Dr. Lawrence Weeda and Regional One Health (overruled objection to page 138—record signed by resident dentist Eric Lomas. Dr. Lomas signed the document making it admissible per Tennessee Rules & Regulations 0800-02-21-.16(6)(b).)

5. Employer's Medical Records Compilation
   - Walgreen's Pharmacy
   - Records of The Family Physician's Group
   - Records of Regional One Health
   - Records of Baptist One Care
   - Records of Methodist Le Bontheur Healthcare
   - Records from Healthwarehouse
   - Questionnaire responses of Dr. Weeda
   - Report of Dr. Melvin Goldin
   - Report of Dr. Joel Reisman
6. Wage Statement
7. Panels signed by Ms. Holdway
8. Personnel records maintained by Lakeside
9. Social Security payment records
10. Service Excellence nominations (sustained employer's hearsay objection)
11. Ms. Holdway's performance evaluations

12. Ms. Holdway's resignation letter
13. Personnel Action Form completed by Lakeside to document Ms. Holdway's resignation
14. Medical records—Ms. Holdsworth and Mr. Hesselrode (sustained employer's hearsay objection)
15. Ms. Deason's notes from resignation meeting with Ms. Holdway
16. Reprimands

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Compensation Hearing Order was sent to the following recipients by the following methods of service on April 15, 2019.

| Name | Certified Mail | Via Email | Service sent to: |
|---|---|---|---|
| Monica Rejaei<br>Employee Attorney | | X | mrejaei@nstlaw.com<br>lbaggett@nstlaw.com |
| Peter Frech<br>Gregory Fuller<br>Employer Attorneys | | X | ppfrech@mijs.com<br>ghfuller@mijs.com<br>jlrusso@mijs.com |

Penny Shrum   w/permission P

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

11



Compensation Hearing Order Right to Appeal:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Compensation Hearing Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**COMPENSATION HEARING NOTICE OF APPEAL**
Tennessee Division of Workers' Compensation
www.tn.gov/labor-wfd/wcomp.shtml
wc.courtclerk@tn.gov
1-800-332-2667

**Docket #:** _____

**State File #/YR:** _____

_____

**Employee**

v.

_____

**Employer**

## Notice

Notice is given that _____

[List name(s) of all appealing party(ies) on separate sheet if necessary]

appeals the order(s) of the Court of Workers' Compensation Claims at _____

_____ to the Workers' Compensation Appeals Board.

[List the date(s) the order(s) was filed in the court clerk's office]

**Judge**_____

## Statement of the Issues

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

## List of Parties

**Appellant (Requesting Party):**_____At Hearing:☐Employer☐Employee

Address:_____

Party's Phone:_____Email:_____

Attorney's Name:_____ BPR#: _____

Attorney's Address:_____ Phone: _____

Attorney's City, State & Zip code:_____

Attorney's Email:_____

*\* Attach an additional sheet for each additional Appellant \**

**Appellee(s)**
**Appellee (Opposing Party):_____**At Hearing:☐Employer☐Employee

Appellee's Address: _____

Appellee's Phone: _____ Email:_____

Attorney's Name: _____ BPR#: _____

Attorney's Address: _____ Phone: _____

Attorney's City, State & Zip code: _____

Attorney's Email: _____

*\* Attach an additional sheet for each additional Appellee \**

## CERTIFICATE OF SERVICE

I, _____ , certify that I have forwarded a true and exact copy of this Compensation Hearing Notice of Appeal by First Class, United States Mail, postage prepaid, to all parties and/or their attorneys in this case in accordance with Rule 0800-02-22.01(2) of the Tennessee Rules of Board of Workers' Compensation Appeals on this the_____ day of _____ , 20___ .

[Signature of appellant or attorney for appellant] _____

Attention: This form should only be used when filing an appeal to the Workers' Compensation Appeals Board. If you wish to appeal a case to the Tennessee Supreme Court, please utilize the form provided by the Court which can be found on their website at the following address:
http://www.tncourts.gov/sites/default/files/docs/notice_of_appeal_-_civil_or_criminal.pdf



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____          2. Address: _____

3. Telephone Number: _____          4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

   My employer's address is: _____

   My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

LB-1108 (REV 11/15)                                                                                       RDA 11082

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

Groceries       $ _____ per month    Telephone       $ _____ per month

Electricity     $ _____ per month    School Supplies $ _____ per month

Water           $ _____ per month    Clothing        $ _____ per month

Gas             $ _____ per month    Child Care      $ _____ per month

Transportation  $ _____ per month    Child Support   $ _____ per month

Car             $ _____ per month

Other           $ _____ per month (describe: _____ )

10. Assets:

Automobile              $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House                   $ _____    (FMV) _____

Other                   $ _____    Describe: _____

11. My debts are:

| Amount Owed | To Whom |
| --- | --- |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____

APPELLANT


Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.


_____

NOTARY PUBLIC

My Commission Expires: _____

LB-1108 (REV 11/15)                                                    RDA 11082